UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO

| In re: | ) | Case No. 13-16985 |
|---|---|---|
| | ) | |
| LifeHealth Science, LLC, | ) | Chapter 11 |
| | ) | |
| Debtor | ) | Judge Pat E. Morgenstern-Clarren |

## DECLARATION OF KENT ADAMS IN SUPPORT OF VOLUNTARY PETITION AND VARIOUS FIRST DAY PLEADINGS

Kent Adams, being duly sworn, deposes and says:

1. I am the Chief Executive Officer and President of LifeHealth Science, LLC, the above-captioned debtor and debtor in possession (the "Debtor"). In my capacity as such, I have detailed knowledge of and experience with the business and financial affairs of the Debtor.

2. As an officer of the Debtor, I am one of the persons responsible for devising and implementing the Debtor's financial business plans and strategies and overseeing the Debtor's financial and operational affairs, and supervising the maintenance of its books and records. I make this declaration in support of several of the motions filed by the Debtor on the Petition Date (the "First Day Motions"). Capitalized terms not defined in this declaration will have the same meanings given to them in the First Day Motions.

### I. BACKGROUND

A. Introduction

3. On October 2, 2013 (the "Petition Date"), the Debtor filed a voluntary petition (the "Petition") for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), in an effort to preserve and maximize the value of its chapter 11 estate, as authorized and directed by the Board of Managers.

4. The Debtor intends to operate its business and to manage its property as debtor in

possession under sections 1107(a) and 1108 of the Bankruptcy Code.

5. I am advised by counsel that this Court has jurisdiction over the Debtor's chapter 11 case pursuant to 28 U.S.C. §§ 157 and 1334 and that venue is proper in the United States Bankruptcy Court for the Northern District of Ohio pursuant to 28 U.S.C. §§ 1408 and 1409.

B. <u>The Debtor's Business</u>

6. The Debtor is an Ohio limited liability company that was formed in 2009. The Debtor is in the business of developing, manufacturing and marketing nutritional health supplements, and its headquarters are located in Cleveland, Ohio.

## II. The First Day Motions

A. <u>Motion for Authority to Maintain Existing Bank Accounts and Business Forms</u>

*(i) Description of the Debtor's Bank Accounts*

7. The Debtor, in the ordinary course of its business, maintains two bank accounts at PNC Bank ("PNC") in Cleveland, Ohio—an operating account (the "Operating Account") into which funds collected from customers (who are located all over the world) are deposited and used to pay the Debtor's operating expenses, including accounts payable, payroll, and credit card deposits, and a wire account which is used to receive wire transfer payments from its customers (the "Wire Account," and together with the Operating Account, the "Bank Accounts").

8. The Debtor should be authorized to continue to use its existing Bank Accounts. The Debtor's customers are located all over the world and therefore, any disruption in the maintenance of the Debtor's Bank Accounts would cause disruption to its customers and irreparable harm the Debtor's estate. The Debtor will coordinate with PNC to ensure that appropriate procedures are in place so that checks issued prior to the Petition Date, but presented after the Petition Date, will not be honored absent approval from the Court.

*(ii)    Request to Continue Using Existing Business Forms*

9.      In the ordinary course of its business operations, the Debtor uses many checks and other business forms (the "Business Forms"). By virtue of the nature and scope of the Debtor's business operations and the number of vendors of goods and services with whom the Debtor deals on a regular basis, it is important that it be permitted to continue using its existing checks and other business forms without alteration or change, other than to include the legend "Debtor-in-Possession" or a "debtor-in-possession number" on checks issued after the Petition Date.

*(iii)   Request for Waiver of § 345 Deposit Guidelines*

10.     The Debtor also seeks a limited waiver of the deposit guidelines set forth in § 345(b) of the Bankruptcy Code, to permit the Debtor to maintain its existing bank accounts even though they may, from time to time, exceed the amount insured by the Federal Deposit insurance Corporation (the "FDIC").

11.     I believe that approval of the continued use of the existing Bank Accounts, and Business Forms will facilitate the smooth and orderly administration of this chapter 11 case, minimize the disruption of the Debtor's business affairs, and enable the Debtor to more effectively and expeditiously reorganize its business.

B.      <u>Motion for Authority to Pay Prepetition Employee Obligations</u>

*(i)     Employee Payroll Process*

12.     The Debtor has 2 part-time, hourly employees (the "Employees"), and the continued and uninterrupted service of these Employees is essential to the Debtor's continuing operations.[1]

---

[1] I, Kent Adams, am the Debtor's only salaried employee. I am also the President and CEO of the Debtor, and I a member of the Debtor. However, for the purposes of this Declaration, the term "Employees" does not include any "insider" of the Debtor within the meaning of 11 U.S.C. § 101(31). Thus, the Debtor is not requesting permission to

3

13-16985-pmc    Doc 13    FILED 10/02/13    ENTERED 10/02/13 16:18:21    Page 3 of 10

13. The Debtor utilizes a payroll service, Paylocity, to process payments to its Employees. In connection with these services, Paylocity and the Debtor routinely deduct from the Debtor's operating account shortly before payroll is due an amount sufficient to pay (i) Employee wages and (ii) the Debtor's share of taxes and certain employee benefit related obligations. As part of the services provided to the Debtor, Paylocity routinely deducts from the Employees' paychecks amounts to be paid on behalf of the Employees for insurance programs, taxes, alimony, garnishment and support payments, and other similar programs on account of which the Debtor is obligated to deduct a sum of money from an Employee's paycheck, and pays that amount to a third party (collectively, the "Deductions").

15. I believe that each of the Debtor's Employees have been paid in full for all of the wages that such Employee earned through the Petition Date. However, there may be small amounts due and owing to the Employees for wages and miscellaneous payroll items that were not paid as of the Petition Date (collectively, "Prepetition Compensation"). Employee obligations and the corresponding Deductions are next payable on October 11, 2013 (the "Payroll Date").

*(ii) Withholding Related Terms and Other Related Third-Party Obligations*

16. The Debtor routinely and ordinarily makes deductions from the Employees' payroll for federal, state and local tax withholdings, Employee savings programs and garnishments. The Debtor requests authority to pay over to the appropriate parties all such Third-Party Obligations in accordance with applicable law and existing company policies and practices. The Debtor requests approval to continue making such payments, including those

---

pay any amounts owed to me which represent my pre-petition salary.

amounts owed Pre-Petition, in the ordinary course of its business.

(iii)   Commission paid to Great Falls Holdings, Inc.

17. The Debtor utilizes a third-party telemarketing service, Great Falls Holdings, Inc. ("Great Falls") which, for all intents and purposes, serves as the Debtor's outside sales force. The continued and uninterrupted service of Great Falls is essential to the Debtor's continuing operations. Great Falls is responsible for fielding calls from potential customers who respond to the Debtor's advertisements that have been placed in newspapers and that have been aired on radio shows throughout the country. A Great Falls' professional answers such inquiry from the potential customer and is tasked with closing the sale. In exchange, the Debtor pays Great Falls commissions, monthly, in an amount equal to either (i) 16% of each sale, (ii) $7.50, or (iii) or $5.00 (the "Commissions"), depending upon the type of order placed. The Debtor last paid Commissions to Great Falls on September 26, 2013, for all Commissions earned through such date.

18. At the Petition Date, the Debtor may owe Commissions to Great Falls for sales made between September 27, 2013, and the Petition Date. However, any such amounts due and owing would be minimal.

C.   Motion for Authority to Obtain Secured Post-Petition Financing

19. In order to continue to operate its business during the restructuring process, the Debtor is seeking an interim and final order authorizing it to obtain secured post-petition financing ("DIP Financing"). The Debtor has entered into a DIP Financing agreement with 1375 East Ninth, LLC ("1375") (the "DIP Loan Agreement"). Pursuant to the DIP Agreement and the Motion seeking its approval, the Debtor intends to borrow funds and use for the continued post-

petition operation of its business in exchange for granting 1375 a security interest and a super-priority lien on all of the Debtor's assets.

20.  The Debtor does not have sources of working capital and financing to operate its business without access to the DIP Financing. The continued viability of the Debtor's business depends on its ability to maintain business relationships with its vendors, suppliers and customers, pay its employees, supply new inventory, and otherwise finance its business operations. Without immediate access to the DIP Financing, the Debtor could not continue to operate its business resulting in serious and irreparable harm to the Debtor and its estate. The Debtor must preserve and maintain, if not enhance, its going concern value in order to successfully reorganize under chapter 11 of the Bankruptcy Code. The ability to obtain DIP Financing is vital to the Debtor's ability to successfully restructure and maintain its enterprise value for the benefit of all creditors and parties in interest. The Debtor attempted to obtain post-petition financing from other sources but was unable to find a lender, other than 1375, willing to provide post-petition financing on terms equal to or better than those offered by 1375 in the DIP Loan Agreement.

21.  I believe that the DIP Financing is essential for the continued operation of the Debtor's business and if the relief requested in the Motion is not granted the Debtor will not be able to continue to operate its business and restructure under chapter 11.

D.  <u>Motion for Order Prohibiting Utilities From Altering, Refusing or Disconnecting Service and Establishing Procedures For Adequate Protection</u>

22.  In connection with the operation of its business, the Debtor is serviced by: (i) Ohio Edison Electric ("Ohio Edison"); (ii) Dominion East Ohio ("Dominion") and (iii) Windstream (collectively, the "Utility Companies"). Ohio Edison, Dominion, and Windstream

provide electric, natural gas, and telephone services, respectively, to the Debtor (the "Utility Services"). The services of the Utility Companies are critical to the maintenance of the Debtor's ongoing operations and the preservation of the Debtor's assets.

23. The Debtor's operations are highly dependent on continued utility services. An interruption of utility service would severely disrupt the Debtor's business operations. Prior to the Petition Date, the Debtor endeavored to pay the Utility Companies in a timely fashion and is current on those payments as of this date, except for those payments that would have been made in the ordinary course of the Debtor's business but for the filing of this chapter 11 case.

24. The Debtor proposes to provide, as adequate assurance of payment to each of the Ohio Edison and Dominion, a continuation of the Existing Deposits (i.e., $130.00 in the case of Ohio Edison and $167.12 in the case of Dominion) already in the possession of Ohio Edison and Dominion, which is specifically contemplated by § 366(c)(1)(A)(i) of the Bankruptcy Code, and which I believe is a reasonable proposal. The Debtor proposes to provide, as adequate assurance of payment to Windstream, a cash deposit in the amount of $265.00 (i.e., the average amount of one month's service), which is specifically contemplated by § 366(c)(1)(A)(i) of the Bankruptcy Code, and which I believe is a reasonable proposal.

25. The Utility Services are necessary for the continued operation of the Debtor's business. If the Utility Companies are able to stop providing Utility Services to the Debtor, the Debtor will not be able to continue to operate its business and reorganization under chapter 11 will be impossible. I believe that the assurance measures contemplated in the Motion are adequate and will protect the Utility Companies interests.

E.  Motion for Order Authorizing the Debtor to Pay Prepetition Claims of Certain Critical Vendors

26. A significant portion of the Debtor's business comes as a result of direct-to-consumer advertising of the Debtor's products. To reach potential customers, the Debtor utilizes the services of HBMG, Inc. ("HBMG") which places print advertisements of the Debtor's products in newspapers throughout the country and pays, out of pocket, the charges for such advertisements. These charges make up virtually all of the amounts currently owed to HBMG. Sweet Pea Ventures, Inc. ("Sweet Pea," and together with HBMG, the "Critical Vendors"), is a vendor which markets the Debtor's products on line, on radio and in print. Rather than buying the Debtor's products and then reselling them, the full sale price is paid to the Debtor through credit card purchases and the Debtor then remits 60% of such price to Sweet Pea.

27. Each of the Critical Vendors provides services that are critical of the Debtor's business and each of them help to produce a significant portion of the Debtor's revenue. Accordingly, HBMG's and Sweet Pea's continued performance of services to the Debtor are necessary for the Debtor to maintain its business operations. While each of the HBMG and Sweet Pea provides services under contracts with the Debtor, the Debtor anticipates that neither of them will perform future services under those contracts if the Debtor is unable immediately to pay the prepetition amounts owing under those contracts.

28. The Debtor estimates that, as of the Petition Date, the Debtor owes HPMG approximately $21,700 and owes Sweet Pea approximately $545 (collectively, the "Pre-Petition Debt") in connection with their services. Further, the Debtor believes that the claims of both HPMG and Sweet Pea arise under executory contracts, which the Debtor intends to assume.

8

29. I believe that a sound business justification exists for paying the prepetition claims of HBMG and Sweet Pea now, because any interruption in the services that each of HBMG and Sweet Pea provides to the Debtor would severely affect the Debtor's possibility of reorganization.

30. Consequently, in the Debtor's business judgment, payment of the Pre-Petition Debt owed to HPMG and Sweet Pea is essential so that (i) the Debtor can avoid costly disruptions to its revenue and business operations and (ii) the Debtor's ability to continue receiving orders from its customers is enhanced.

### III. CONCLUSION

31. As described in detail in each of the First Day Motions, the relief requested is essential to maintain the viability of the Debtor's business and preserve the Debtor's ability to reorganize successfully. I believe that if the relief sought in the First Day Motions is not timely granted at the outset of this case, the Debtor's business operations could be seriously impaired, and that its transition to operations into chapter 11 would be hampered and that its overall reorganization efforts could be impeded.

31. Accordingly, for the reasons stated in this declaration and in each of the First Day Motions filed concurrently or in connection with the commencement of this case, I respectfully request that the relief requested in each of the First Day Motions be granted in its entirety, together with such other and further relief as this Court deems just and proper.

I certify under penalty of perjury under the laws of the United States that, based upon my knowledge, information and belief as set forth in this declaration, the foregoing is true and correct.

Executed on this 30th day of September 2013, in Cleveland, Ohio.

/s/ Kent Adams

1531757_1